**Wardell HICKS, Appellant,**

v.

**INDUSTRIAL UNDERWRITERS IN-SURANCE COMPANY, Appellee.**

No. 6028.

Court of Civil Appeals of Texas, Waco.

May 10, 1979.

Jesse E. Shivers, Jr., Houston, for appellant.

Robert G. Taylor, II, Susan E. Crowley and C. A. Livingston, Jr., Boswell, O'Toole, Davis & Pickering, Houston, for appellee.

OPINION

JAMES, Justice.

This is a workmen's compensation case. Pursuant to and in harmony with the jury verdict, the trial court entered a judgment that the Claimant take nothing, from which he appeals. We reverse and remand.

Claimant-Appellant Wardell Hicks was awarded recoveries upon three separate injuries by the Industrial Accident Board, one being a specific injury to his right foot, and the other two being general injuries to his lower back. Appellee Industrial Underwriters Insurance Co., the insurance carrier for Claimant's employer, appealed the three Board awards to the District Court. The three cases were consolidated and tried before a jury upon Claimant-Appellant's cross-actions.

The jury in answer to special issues, found (or failed to find as hereinafter indicated) as follows: (In this connection, we show only the answers to those special issues which were actually answered by the jury, and omit any reference to those special issues not answered by the jury.)

(1) Claimant received an injury to his right foot on or about April 5, 1975.

(2) Which injury was in the course of his employment by Lewis & Coker Supermarkets (Claimant's employer).

(3) The jury failed to find that the injury was a producing cause of any total loss of use of Claimant's right foot.

(8) The jury failed to find that such injury will be a producing cause of any partial loss of use of Claimant's right foot.

(9) The jury failed to find that Claimant had or will have any partial loss of use of his right foot, following such injury.

(14) Claimant received an injury in the course of his employment on or about "either one or both dates of July 31, 1975, and October 1, 1975."

(15) The jury failed to find that "the injuries or either of them" were a producing cause of any total incapacity.

(16) Such "injuries or either of them" were a producing cause of partial incapacity.

(16A and B) The partial incapacity of the July 31, 1975, injury began on July 31, 1975, and ended on August 9, 1975.

(16A and B) The partial incapacity of the October 1, 1975, injury began on October 1, 1975, and ended on October 14, 1975.

(16C) The Claimant's average weekly earning capacity during each period of partial incapacity was $330.00.

(17) Medical care was reasonably required by Claimant as a result of the injury or injuries on either or both dates of July 31, 1975, and October 1, 1975.

(18) The jury failed to find that the Defendant-Appellee Insurance Co. failed to furnish within a reasonable time medical care reasonably required as a result of such injury or injuries.

After jury verdict, the trial court entered judgment that Claimant Wardell Hicks take nothing against the Defendant Industrial Underwriters Insurance Company, from which judgment Claimant Hicks appeals.

During all times pertinent to this controversy wherein Claimant suffered the three injuries complained of, Claimant was employed by Lewis & Coker Supermarkets as a truck driver of a large truck, and in his work he was required to load and unload heavy baskets of foodstuffs on and off his truck weighing a thousand pounds and more; that such work required heavy physical exertion and labor. Some of these baskets weighed as much as 2000 pounds, and would require 5 or 6 men to load or unload them; however, on some occasions the Claimant would have to load or unload such baskets with the help of only one other man.

On April 5, 1975, Claimant Hicks suffered an injury to his right foot, while in the process of unloading one of these large baskets at a store in Pasadena, Texas. Hicks was in front of the basket, pulling at it, and

the market manager was behind the basket pushing it, at which time the basket went off the ramp and mashed Hicks towards the door. Since the basket was jamming Hicks up against the wall, he raised his right foot to try to hold the basket off him, thereby injuring his right foot. Hicks could not walk, was carried by the store manager and market manager inside the store, an ambulance was called, Hicks was taken to Memorial Hospital, his foot was X-rayed, his foot was bandaged, he was given pain pills and crutches, and sent home. He saw Dr. Jacobe five or six times, who treated Hicks for his right foot. Hicks lost some days from work; however, he cut the top part out of his right shoe and went back to work before the doctor released him. Hicks testified that ever since this injury he has to wear a loose or large shoe on his right foot, and after he went back to work his employer sent a man on the truck with him for a period of time to help him load and unload the baskets.

On July 31, 1975, Claimant Hicks suffered the first injury to his lower back. He and about five other men were loading some of the heavy baskets on his truck, and were pushing a basket up a ramp into the truck. The floor of the warehouse where the loading took place was wet. As they were pushing the basket into the truck, Hicks's foot slipped and he fell, hurting his lower back. Hicks testified that he did not have good use of his right foot at the time, and this was at least partly responsible for his slipping and falling. Hicks was sent initially to Dr. Liles for medical treatment. Dr. Liles took X-rays, gave Hicks some pain pills and sent him home. Hicks was off work "nine or ten days", saw Dr. Liles six or seven times, went back to work, and from the time he went back to work until October 1, 1975, he lost work on an average of two days every other week. During these times his back hurt him considerably, and he sought to relieve the pain by hot tub baths.

On October 1, 1975, Claimant Hicks suffered his second back injury. Hicks and some others were unloading a basket off his

truck at Baytown, Texas, when the basket tilted over and fell off the lift gate, and threw Hicks off the truck. He suffered immediate pains in his lower back and down the calf of his left leg. For this injury he received medical treatment which will be more fully hereinafter discussed.

Claimant-Appellant, among other things, asserts that the jury's answers to the following special issues are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust under the rule laid down by our Supreme Court in *In Re King's Estate* (1951) 150 Tex. 662, 244 S.W.2d 660, to wit:

(1) Number 3, wherein the jury failed to find that the injury to Hicks's right foot was a producing cause of any total loss of use of his right foot.

(2) Number 8, wherein the jury failed to find that Claimant's foot injury was a producing cause of any partial loss of use of his right foot.

(3) Number 15, wherein the jury failed to find that either of the two back injuries (that is, of July 31, 1975, and October 1, 1975) was a producing cause of any total incapacity.

(4) Number 16B, wherein the jury found the first back injury to be of only ten days duration, and the second back injury to be of only fourteen days duration.

(5) Number 18, wherein the jury failed to find that the Defendant insurance company failed to furnish within a reasonable time medical care reasonably required as a result of Claimant's injuries.

■■■■ Under the rule of *In Re King's Estate,* supra, we are required to examine the entire record, and weigh the evidence in support of as well as against the jury's answers. After a careful examination of the entire record, we are of the opinion and hold that the jury's answers to the special issues hereinabove mentioned are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust, and thereby reverse and remand the cause for retrial.

To summarize the pertinent portions of the jury's findings, the jury found injury in course of employment concerning Claimant's specific injury to his right foot. Likewise, the jury found in effect that both back injuries, to wit, of July 31, 1975, and October 1, 1975, were in the course and scope of employment, and that medical care was reasonably required for the back injuries.

However, as to the foot injury, the jury failed to find that same was a producing cause of any total or partial disability.

Then the jury found no total incapacity was produced from either of the two back injuries. The jury did find partial incapacity as to the two back injuries, and then found durations of partial incapacity to be ten days and fourteen days, respectively, on each of the two back injuries. As stated, the jury found medical care was reasonably required, but then found in effect that Defendant-Appellee did not fail to furnish such medical expense within a reasonable time. These findings resulted in a take nothing judgment as to all three injuries, with denial of Claimant-Appellant's unpaid medical expenses of some $2,700.40.

Claimant-Appellant is 43 years of age with a seventh grade education. He had been a truck driver for seven years employed by Lewis & Coker Supermarkets at the time of his injuries, as well as having been in addition thereto a part-time Baptist preacher. Claimant's evidence consisted of his own oral testimony, that of Dr. James R. Oates, M.D., a physical medical specialist, of Dr. Frederick P. Gregg, M.D., a radiologist, of Dr. Howard Z. Finkel, M.D., an orthopedic surgeon, and medical bills and records of the above-named doctors as well as records of McGregor Medical Clinic, Del Oro Hospital, and St. Luke's Episcopal Hospital. Defendant-Appellee Insurance Company's evidence consisted of the testimony of Dr. Bradford Urquhart, M.D., an orthopedic surgeon, and two stipulated statements.

Dr. Oates first treated Claimant on February 21, 1977, for all three injuries, gave him (Claimant) an electromyographic exam-

ination of his lower back which revealed "abnormalities compatible with the bilateral presence of fifth lumbar radiculopathies and suggestive of the possible bilateral superaddition of some element of first sacral radiculopathy." His diagnosis was a lumbar intervertebral discopathy, attributing it to the July 31, 1975 injury. Dr. Oates's unpaid medical bill was $450.00, and showed numerous physical therapy treatments for Hicks.

Dr. Finkel, who was an orthopedic surgeon and an associate on the medical staff of McGregor Medical Clinic, examined Hicks after he left the hospital because he could get no insurance authorization for payment. Dr. Finkel examined Hicks, and on subjective medical findings that he had a low back injury, hospitalized Hicks on October 30, 1977, in St. Luke's Hospital, and then first applied traction therapy to which Hicks did not respond. Dr. Finkel then did a low back lumbar myelogram and a discogram operation on claimant, after which said Doctor's diagnosis was a "bulging of the disc spaces at L–4 and L 5–S1 interspace, and the discogram showed a degenerated disc at the L 5–S1 arcs, as "the dye extended from the disc." Dr. Finkel diagnosed Hicks's back trouble as a "ruptured lumbar disc at the lumbosacral junction which is irritating his nerve root," and recommended surgery on his back to remove the disc. Dr. Finkel also recommended that Claimant not do any strenuous activities such as a lot of bending, lifting, and so forth; he said Hicks would have difficulty in doing heavy labor type of work, and further testified that he (Dr. Finkel) would not pass Hicks on a pre-employment physical examination. His opinion was that the injuries of July 31, 1975, and October 1, 1975, were producing causes of Hicks's back disabilities, stated there was temporary total incapacity, and further testified that a disc does not heal itself, but could scar down. He further said that if a prior physician examined Hicks and took only regular X-rays, (as did Dr. Urquhart), but did not perform a myelogram or discogram operation, then there was no possible way that this ruptured disc could have been detected by the prior doctor (Dr. Urquhart). Dr. Finkel stated that surgery for disc removal was a major operation, wherein post operation convalescence could involve an incapacity of from two and a half months to one year. The unpaid medical bill of Dr. Finkel was $795.00 and the unpaid St. Luke's Hospital bill for Hicks's treatment was $1,650.00.

Dr. Gregg, radiologist at St. Luke's Hospital, testified that he performed a discogram operation on Claimant in the hospital by injection of dye into two discs, L 4–5 and L 5–S1, and diagnosed a "ruptured disc at the L 5–S1 level."

Dr. Bradford Urquhart, the orthopedic surgeon who treated Claimant on the authorization of Defendant-Appellee Insurance Company, and who testified in behalf of the Defendant, said he first saw Hicks on January 29, 1976, for the back injuries, after Hicks had first been treated by Dr. Liles; Dr. Urquhart testified that he found subjective and objective complaints of back injury; that on January 29, 1976, he diagnosed Hicks's back trouble as a "lumbosacral sprain"; that he instructed Hicks to "remain off work for a brief period," and stated that at that time he believed Hicks could return to work in four to six weeks. However, Claimant returned for treatment six weeks later, to wit, on March 11, 1976 with "continued . . . low back pain," and pain in left leg with numbness; that Hicks had worked only one day the week prior, but had not worked the week of March 11, 1976; that said Doctor instructed Hicks again to "remain off work," and then released Hicks to return to work on March 25, 1976. But Hicks returned again on April 2, 1976, whereupon Dr. Urquhart found "objective findings" of "tightness of the muscles" and diagnosed that Hicks had "aggravated his lumbosacral sprain" with another two to four weeks off work, and said Doctor treated Hicks two more times, to wit, on April 15, 1976 and April 26, 1976. In April 1976, Defendant Insurance Company refused to authorize payment for Dr. Urquhart's last medical prescription, and from that time on Hicks was on his own

insofar as medical expense was concerned. In October 1976, Hicks informed Defendant Company that he needed more medical treatment, and requested that Defendant Company furnish same.

It is significant that Dr. Urquhart took only regular-type X-rays upon Hicks, and never took a discogram or myelogram. Said Doctor testified that the regular X-rays were "normal," and stated that discograms and myelograms were not reliable. He admitted on cross-examination that it was a possibility that Hicks had a ruptured disc when he examined him, and that regular X-rays such as he took do not show a ruptured disc. He stated that he would not necessarily recommend surgery if a myelogram and discogram did show a ruptured disc, and further testified that a ruptured back disc will never restore to its normal condition, and if such a patient "continues to have problems," he would recommend surgery. It is also significant that the last time Dr. Urquhart saw Hicks was in April 1976, some twenty-two months prior to trial.

This trial took place in February 1978, nearly two years after Defendant-Appellee quit furnishing medical treatment for Claimant. As stated before, at the time of trial Hicks had some $2,700.00 worth of unpaid medical expenses, incurred after Defendant-Appellee cut him off. This does not take into account the fact that medical evidence showed that Hicks needs back surgery for removal of the ruptured disc which he has not yet had.

Claimant-Appellant testified that after his back injury of October 1, 1975, he was sent to Dr. Liles, and lost more time from work until sometime in November 1975; that Dr. Liles referred him to Dr. Urquhart for further treatment; that he could not any longer perform the same duties he did before because of his back injuries; that after October 1, 1975, his back "hurts me, pains me all the time"; that he couldn't stoop over or pick up anything; that the work he has performed since the last back injury of October 1, 1975, has consisted merely of driving a truck, without doing any loading, unloading, or lifting. Hicks further testified he had applied for several jobs, listing on the application blanks that he had an injury from Lewis & Coker, but did not get the job; that in 1976, he went to the State employment office and signed the required document that he was "willing and able to work," but that such statement was not the complete truth, but he did it because he "needed food for his family"; that in 1976 he got a job with Global Steel Company as a truck driver only, with no loading or unloading duties; that Global Steel was aware of his injury and let him take off from work when he has pain. Hicks was working for Global Steel at the time of trial; however, he testified that his back pain kept getting worse all the time.

This record contains ample medical testimony to the effect that Claimant-Appellant has serious low back injury, to wit, a ruptured disc; that a ruptured disc will not cure itself but usually gets worse unless corrected by surgery. Defendant-Appellee has countered this evidence with the testimony of Dr. Urquhart, who based his diagnosis mainly upon regular X-rays as opposed to a myelogram or discogram. The expert medical evidence here seems to be consistent to the effect that a ruptured disc will not show up on a regular X-ray. Moreover, the medical testimony of Claimant's doctors is consistent with and corroborates the testimony of Claimant Hicks himself. In addition thereto, the last time Dr. Urquhart ever saw Hicks was on April 26, 1976, about twenty-two months before the trial of this case.

For the reasons herein stated, we reverse and remand the cause to the trial court for trial on the merits.

REVERSED AND REMANDED.